UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

|                                        |   |                          |
|----------------------------------------|---|--------------------------|
| PEGGY BURDEN                           | : |                          |
|                                        | : |                          |
| V.                                     | : | CIV. NO. 3:07CV0642 (JCH) |
|                                        | : |                          |
| MICHAEL J. ASTRUE,                     | : |                          |
| COMMISSIONER, SOCIAL SECURITY          | : |                          |
| ADMINISTRATION                         | : |                          |
|                                        | : |                          |

## RECOMMENDED RULING

This action, filed under §205(g) of the Social Security Act
("the Act"), 42 U.S.C. §405(g), as amended, seeks review of a
final decision of the Commissioner of Social Security ("the
Commissioner"), in which he found that the plaintiff was not
entitled to Disability Insurance Benefits ("DIB") or Supplemental
Security Income ("SSI").

The issue is whether substantial evidence in the record
supported the ALJ's determination that the plaintiff was not
disabled at any time relevant to the ALJ's decision, and whether
the ALJ properly applied legal principles in arriving at his
finding of no disability.

For the reasons that follow, plaintiff's Motion for Order
Reversing the Decision of the Commissioner [**Doc. #16**] is **DENIED.**
Defendant's Motion for Order Affirming the Decision of the
Commissioner [**Doc. #21**] is **GRANTED.**

## ADMINISTRATIVE PROCEEDINGS

On September 4, 2003, the plaintiff filed an application for

Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"), alleging disability since June 7, 2003. (Tr. 61-63, 401-403)  Her applications were denied initially and on reconsideration. (Tr. 33-39, 42-45, 404-412)

On June 17, 2005, Administrative Law Judge (ALJ) Robert Di Biccaro held a hearing at which Plaintiff, represented by counsel, testified. (Tr. 414-442)  On November 22, 2005, the ALJ issued a decision denying the claims. (Tr. 22-32)

Plaintiff thereafter appealed the ALJ's decision. (Tr. 16). On February 3, 2007, the Appeals Council denied plaintiff's request for review (Tr.11-13), and on March 28, 2007, denied reconsideration of their decision (Tr. 6-7). Thus, the ALJ's November 22, 2005, decision is the final decision of the Commissioner, subject to judicial review. (Tr. 7-9). Plaintiff, represented by counsel, has appealed to this Court.

BACKGROUND

Peggy Burden was born on August 20, 1962. (Certified Transcript of Record, compiled on May 2, 2007 (hereinafter "Tr.") at 34).  She was forty-two years old on the date of her administrative hearing. (Tr. 34).  Plaintiff has an eleventh-grade education. (Tr. 79, 424). She had additional training as a Certified Nurse's Aide. (Tr. 424). Her past relevant work, see 20 C.F.R. 404.1565(a) and Social Security Ruling ("SSR") 96-8p[1], included work as a nurse's assistant and most recently as a day

_____

[1] Available at http://www.ssa.gov/OP_Home/rulings/di/01/SSR96-08-di-01.html.

care assistant. (Tr. 74, 86-87, 95-96, 437-438). She received a positive evaluation from her last employer, Greenwich Country Day School. (Tr. 121-123). She has applied for disability twice before, in 1994 and 1998, and continued working after each claim was denied. (Tr. 66-67).

## Medical Records

### Physical Health Records

On December 9, 2002, when the plaintiff was seen at the Norwalk Hospital emergency room following an motor vehicle accident ("MVA"), x-rays of her thoracic spine and cervical spine showed some degenerative changes but no fractures. (Tr. 147-151). On December 10, 2002, Dr. Jianchao Xu diagnosed strain/sprain of the cervical spine, thoracic spine and lumbar spine and recommended physical therapy. (Tr. 170-173). Dr. Xu's assessment of the hospital x-rays on December 12, 2002, indicated mild end plate spurring at L3-L4 (Tr. 174), and an ultrasound from that day showed a mild degree of facet inflammation at C3 through C7 and L1 through L5 (Tr. 152). Both studies showed a mild C-3 retrolisthesis[2] on C-4, and C-5 on C-6. (Tr. 172-174).

Plaintiff attended physical therapy for her back from

---

[2] "Retrolisthesis" is the posterior displacement of one vertebral body on the subjacent vertebral body. General Electric Company, Medcyclopaedia, available at http://www.medcyclopaedia.com/library/topics/volume_iii_1/r/retrolisthesis.aspx (last visited June 6, 2008).

December 11, 2002, through September 8, 2003. (Tr. 175-185)[3]. In January 2003 she returned to her work as a daycare assistant on light duty and worked at that job until June 2003, the end of the school year. (Tr. 121-123). In February 2003, the physical therapist noted her improvement and visits were scheduled less often (Tr. 180), ceasing in May with instructions to continue cervical and lumbar exercises at home (Tr. 179).

In late July 2003, Dr. Gerald Perlman saw the plaintiff for pain in the left leg radiating to the ankle, diagnosed trochanteric[4] bursitis and sciatica, and prescribed Vioxx. (Tr. 197). The plaintiff returned to physical therapy. (Tr. 178). Dr. Xu ordered a lumbar MRI on August 8, 2003, which revealed an asymmetric left foraminal bulging at L3-4 and L4-5 (Tr. 158-159), and referred her again to Dr. Perlman (Tr. 176). Dr. Perlman noted on August 25, 2003, that her trochanteric bursitis had

---

[3] These are notes by Advanced Health Professionals practice, of which Dr. Xu was the medical supervisor. (See also Tr. 168-174). They were incorrectly identified in the List of Exhibits (Tr. 3) as notes from Dr. Perlman. Note that the ALJ did not rely upon this typo. See infra p. 21.

[4] A "trochanter" is one of two projections on the femur located below the neck of the bone. "Bursitis" is inflammation of a synovially lined bursa. With normal activity, mild irritation of the synovial lining causes fluid to accumulate within the bursa and allows it to act as a cushion protecting a bony prominence from frictional or compressive forces. Bursitis results when the synovitis is severe or prolonged; it may then cause inflammation of surrounding structures. General Electric Company, Medcyclopaedia, available at http://www.medcyclopaedia.com/library/topics/volume_iii_1/t/trochanter.aspx; http://www.medcyclopaedia.com/library/topics/volume_vii/b/bursitis.aspx (last visited June 6, 2008).

resolved with the Vioxx, and on September 5, 2003, he stated that the plaintiff was doing better and should continue with physical therapy. (Tr. 197). However, the plaintiff did not return to her daycare work at the beginning of the new school year as expected. (Tr. 121-123). Dr. Perlman injected her with cortisone on September 22, 2003, when she complained that her hip pain had returned, but stated that no further treatment was indicated. (Tr. 197).

On September 24, 2003, Dr. Edward Spellman conducted a neurological exam, finding plaintiff's mental status to be normal, with no evidence of memory impairment or loss. (Tr. 280). Motor and sensory examinations were normal, and the musculoskeletal examination was unremarkable. (Tr. 281). He noted that despite the plaintiff's clinical complaints, she had a normal range of motion. (Id.). He saw no sign of major lumbosacral radiculopathy, and the MRI showed only a mild L3-4 and L4-5 disc bulge, without disc herniation. (Id.). Dr. Spellman doubted that further conservative therapy would help to relieve her pain, and therefore recommended a series of epidural blocks. (Id.).

On October 28, 2003, Dr. Xu determined that plaintiff had reached her maximum medical improvement and conducted a final examination. (Tr. 282-284). He noted that plaintiff reported decreased lumbosacral pain, despite refusing the recommended epidural injection, and minimal and infrequent sciatic pain. (Tr. 283). He opined that her lumbar condition might be subject to

future flare-ups and thus found a 13% permanent partial whole person impairment. (Tr. 284). Dr. Xu instructed the plaintiff to continue with her home stretching and exercise program, and suggested that the steroid injections might be indicated in the case of a future flare-up. (Tr. 284).

On November 4, 2003, Dr. Pardeep Sood performed a lumbar epidural injection at L4-5. (Tr. 198, 393). In his follow-up examination on February 13, 2004, plaintiff reported to Dr. Sood that the injection had worked for a while but that the symptoms had returned. (Tr. 227). On March 5, 2004, Dr. Sood performed a second injection and prescribed Oxycodone. (Tr. 226). The plaintiff reported that the injection benefitted her for six to seven weeks. (Tr. 375). Dr. Sood saw the plaintiff once every couple of months between June 2004 and August 2005, at which times he refilled her Oxycodone prescription. (Tr. 375-391).

The plaintiff also complained of migraine headaches, for which she reported that she was taking medication. (Tr. 345, 397). She was seen in the Norwalk Hospital emergency room on March 18, 2004, where a CT scan showed no brain abnormality, and was seen again for migraines on April 21, 2004. (Tr. 310-318, 349-359). The plaintiff followed up with her primary care physician, Dr. Martin Perlin, on March 22, 2004, who called it a non-intractable migraine (Tr. 323-324) and instructed her to use Imitrex as needed (Tr. 345). She returned to the emergency room in November 2004 complaining of dizziness. (Tr. 360-370).

Dr. Perlin also saw the plaintiff for complaints of cervical

spine and left arm pain. (Tr. 325-328). He assessed it as radiculitis in December 2004 and osteoarthritis generalized multiple sites in February 2005. (Id.). He also saw the plaintiff in late February 2005 for a urinary tract infection. (Tr. 329).

Mental Health Record

On December 4, 2003, consultative psychologist Frank Volle, Ph.D., evaluated the plaintiff. (Tr. 200-203). The plaintiff reported that her daily activities consist of getting her children ready for school, making beds, doing some cooking, laundry, and cleaning, and watching television. (Tr. 201). She also reported trouble with sleeping and socializing because of back pain. (Id.). Dr. Volle estimated that she was of low-average intelligence, and noted that her attention and repetition were only mildly impaired, while her memory was excellent. (Tr. 202). On the Bender-Gestalt test, Dr. Volle noted a perceptual disorder, which he attributed to mild brain damage from the MVAs[5]. (Tr. 200-202). On the narrative memory test, Dr. Volle noted some difficulty due to preoccupation with pain. (Id.). The plaintiff read at a 6.3 grade level. (Id.).

Regarding her mental status, Dr. Volle found no evidence of a thought disorder or psychosis. (Id.). On the Rorschach test, he noted a probable borderline organic disorder, which he again attributed to the automobile accidents, but also noted that the

_____

[5] Ms. Burden was in two severe motor vehicle accidents, including when a vehicle ran over both her legs when she was nine years old, which required surgery on both legs. (Tr. 200, 279). Most recently, her car was rear-ended on December 9, 2002, which led to her current complaint of debilitating pain. (Id.).

7

results were consistent with a person of low-average intelligence. (Tr. 202-203). The Rey's test for malingering indicated that the plaintiff was not consciously exaggerating her claims. (Tr. 203). Dr. Volle found that the claimant understood instructions but was limited in persistence and pace by "her apparently intractable pain." (Id.). Dr. Volle diagnosed moderate dysthymia under listing 12.04 and ruled out post-concussion disorder. (Id.).

Disability Determination

On September 16, 2003, Dr. Nathaniel Kaplan, a state agency physician, reviewed the plaintiff's medical records for a physical Residual Functional Capacity ("RFC") assessment and found that the plaintiff could lift and carry ten pounds frequently and twenty pounds occasionally; could stand, walk, or sit (with normal breaks) for six hours in an eight-hour workday; and should only occasionally climb, balance, stoop, kneel, etc. (Tr. 188-196).

On December 17, 2003, Dr. Robert Doherty, a state agency psychiatrist, reviewed the plaintiff's medical records for a Psychiatric Review Technique Form ("PRTF") and found that her mental impairment was not severe. (Tr. 205). He found mild limitations in the plaintiff's abilities to function in daily living and to socialize. As regards work, Dr. Doherty found a mild limitation in the plaintiff's ability to maintain concentration, persistence, and pace. (Tr. 214).

On April 12, 2004, a second RFC was prepared by Dr. Derrick Bailey. (Tr. 245-252). His findings match the prior RFC by Dr. Kaplan (see supra), except that the new RFC added that the plaintiff would be limited to occasional use of the left leg to push/pull. (Tr. 246-247).

On May 15, 2004, Dr. Thomas Hill, a state agency psychiatrist, prepared a second PRTF and made the same findings as Dr. Doherty (see supra), except that he found a moderate limitation in plaintiff's ability to maintain concentration, persistence, and pace, as opposed to a mild limitation. (Tr. 240).

Prior to the hearing before the ALJ, the plaintiff's primary care physician, Dr. Perlin, also prepared an assessment of her ability to perform work-related physical activities on June 23, 2005, although his last recorded examination of the plaintiff was four months earlier. (Tr. 371-374). Dr. Perlin opined that in an eight-hour workday, the plaintiff could occasionally lift very little, stand and walk for one hour, and sit for two hours because of osteoarthritis. (Id.). He marked down that she could not perform postural activities, such as climbing, balancing, stooping, etc. as well as reaching, pushing/pulling, etc, because of osteoarthritis. (Id.). He also attributed limitations in hearing and speaking to osteoarthritis, and marked that the plaintiff could not tolerate environmental factors such as temperature extremes, dust, humidity, etc., but did not indicate

any cause. (Id.).[6]

Hearing Testimony

On June 17, 2005, the plaintiff appeared with counsel at a hearing before ALJ Robert Di Biccaro. At the time of the hearing, Ms. Burden was forty-two years old. (Tr. 423).

Plaintiff was last employed as a daycare assistant at the Greenwich Country Day School, a job she held for approximately three-and-a-half years. Prior to that position she worked as a certified nurses aide both in nursing homes and "private duty." (Tr. 437-438). She testified that she ceased working as a daycare assistant because of persisting pain that resulted from an MVA six months prior. (Tr. 424-425).

Plaintiff testified that she has trouble sleeping because of pain in "the lower part of my back and it runs through to my hip and down my left leg." (Tr. 425). She stated that the pain is constant, and that it is worsened "if I overdue [sic] myself." (Tr. 425). She estimated that she can "stay on feet [sic] about four to five hours and then it gets worse." (Tr. 425, 435). Additionally, the plaintiff testified that it is easier for her to stand than to sit. (Tr. 435). However, she later retracted that estimate, saying that she could stand "[a]t the longest, I'll say maybe half an hour. Then I'll sit and rest." (Tr. 436).

---

[6] See discussion infra, p. 14. The ALJ found that Dr. Perlin's June 23, 2005, assessment was not supported by contemporaneous clinical evidence and was inconsistent with other substantial evidence from the record. (Tr. 27).

She added that "I can sit for maybe like a half an hour, forty-five minutes then I'll get up and move around." (Tr. 435). She summarized that she alternates positions when she starts to feel pain in her back. (Tr. 436).

Ms. Burden stated that she can bend and pick up something from the floor. (Tr. 434). The ALJ asked if she could lift up to ten pounds, for which plaintiff's counsel suggested "a bag of potatoes" or "a gallon of milk" as examples, and plaintiff testified that she could lift them. (Tr. 435-436). She stated that she doesn't help her daughter with grocery shopping because "I think that would affect my back." (Tr. 435).

Plaintiff's attorney stated that she takes Oxycodone to manage this pain, "HCL milligrams, one capsule every four hours." (Tr. 426).[7] She also testified that physical therapy did not help; however, she had two spinal injections that relieved the pain for two months. (Tr. 427).

Plaintiff testified that in her last employment she cared for babies from six weeks old to three years old. (Tr. 439). In her description, "[w]e would have to feed the babies, change them. We'd take them outside for playtime. And we just did like projects with them." (Tr. 439). She stated that she had to lift the babies, including newborns of seven to eight pounds and older children "maybe like twenty pounds" that she did not have to carry. (Tr. 439). She stated that she could no longer perform the

---

[7] Dr. Sood's records show that he prescribed 120 Oxycodone capsules of 5 mg every two months, which represents two capsules per day, not four. (Tr. 392).

job because "I was being in pain. Just being, sitting on the floor. Or having to lift them to put on the changing table." (Tr. 440).

Plaintiff also testified that she feels pain "with my neck and it runs into my left arm. The whole arm." (Tr. 428). She testified that she is right-handed. (Tr. 428). She stated that the pain "comes and goes" with no apparent cause. (Tr. 428, 437). She stated, "It's like my arm is so heavy. If I try to lift a cup of water I feel like I'm lifting weights." (Tr. 428).

Ms. Burden also complained of migraine headaches, occurring "twice out of a week." (Tr. 428). She testified that she takes two medications for headaches, one daily and one when a headache comes. (Tr. 428-429). She stated that she went to the emergency room "two to three times" when the medication didn't work, but not since 2004. (Tr. 430). She described the symptoms of the headaches as dizziness, nausea, intolerance of sound and light. (Tr. 430).

Finally, plaintiff complained of depression. (Tr. 431). She described being "zonked out" by the Oxycodone and feeling unable to do social activities with her children. (Tr. 431). She has three children, two girls and a boy. (Tr. 432). The older girl is twenty-one years old and does most of the housework (cleaning, vacuuming, mopping, laundry, and cooking). (Tr. 433). Plaintiff testified that during the day she mostly watches TV and sleeps because she feels "out of it from the medication," which makes her "drowsy." (Tr. 433). However, she stated that she sometimes

cannot sleep through the night because of pain. (Tr. 433). When this occurs, she takes another pill. (Tr. 434).

### Disability and the Administrative Standard of Review

To be eligible for supplemental security income, Ms. Burden must establish that she suffered from a disability within the meaning of the Social Security Act. "Disability" is defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

The Act does not contemplate degrees of disability or allow for an award based on partial disability. Stephens v. Heckler, 766 F.2d 284, 285 (7th Cir. 1985). Ms. Burden was disabled if her impairments were of such severity that she was unable to perform work that he had previously done, and if, based on her age, education, and work experience, she could not engage in any other kind of substantial gainful work existing in the national economy. 42 U.S.C. §1382c(a)(3)(B).

To evaluate Ms. Burden's case, the ALJ performed the sequential five-step analysis pursuant to 20 C.F.R. §§ 404.1520 and 416.920, to determine whether plaintiff was disabled under the Social Security Act. First, the claimant must not be working, and second, the claimant must have a "severe impairment." Third, if the impairment is one listed in Appendix 1 of the regulations

13

that conclusively requires a determination of disability, the
claimant will be found disabled and the inquiry ends. Fourth, if
the claimant does not have a listed impairment, she must be
incapable of continuing in her prior type of work. Fifth, there
must not be another type of work the claimant can do. If the
analysis is satisfied through step five, the Commissioner must
find the claimant to be disabled. Draegert v. Barnhart, 311 F.3d
468, 472 (2d Cir. 2002); see also Shaw v. Chater, 221 F.3d 126,
132 (2d Cir. 2000); 20 C.F.R. §§ 404.1520(b-f), 416.920(b-f). The
burden of proof is on the claimant for the first four steps and
on the Commissioner for the fifth step, if the analysis proceeds
that far. Balsamo v. Chater, 142 F.3d 75, 80 (2d Cir. 1998)
(citations omitted).

The ALJ found that Ms. Burden satisfied the first two steps.
(Tr. 30).

At step three, the ALJ found that Ms. Burden's impairments
did not meet or medically equal, either singly or in combination,
an impairment listed in the appendix to the regulations, 20
C.F.R., Part 404, Subpart P, Appendix 1, leading to an automatic
finding of disability without further analysis. (Tr. 30).
Plaintiff does not contest this conclusion.

The ALJ then assessed Ms. Burden's residual functional
capacity as required in step four. The ALJ found plaintiff
retained the following RFC:

> She can engage in work at the sedentary
> exertional level [see 20 C.F.R. § § 404.1567
> and 416.967], with occasional pushing/pulling
> with the left leg, and requires jobs with

14

> simple instructions and routine repetitive
> tasks. She has moderate dysthymia under
> listing 12.04 with mild restrictions of
> activities of daily living, and in
> maintaining social functioning, mild to
> moderate difficulties in maintaining
> concentration, persistence, or pace, and she
> has had no episodes of decompensation of
> extended durations.

(Tr. 28). Thus, she is unable to continue in her prior work.

In making this determination, the ALJ found that the Medical
Assessment of Ability to Do Work-Related Activities by the
primary care physician, Dr. Perlin, "cannot be given controlling
weight, or even fully credited as representative of the
claimant's overall physical functioning capacity because it is
inconsistent with other substantial evidence of the record to the
contrary." (Tr. 28). See 20 C.F.R. § 404.1527(e); SSR 96-2p. In
doing so, the ALJ noted that although the opinion of an examining
physician generally outweighs that of a non-examining physician,
e.g. the RFC assessments of the agency physicians, "[t]he
Administrative Law Judge is free to reject the opinion of any
physician when the evidence supports a contrary conclusion 20 CFR
404.927 [sic]." (Tr. 27). The ALJ cited such contrary evidence
both from other examining physicians and in the plaintiff's own
testimony. (Tr. 28). Furthermore, the ALJ found that:

> [T]he claimant's hearing testimony was not
> fully credible, and that her inability to do
> all work activity is not supported by the
> medical record. The undersigned [ALJ] notes
> that the claimant showed no visible
> discomfort during the hearing. She testified
> that she could stand 4-5 hours, although upon
> further questioning she back-tracked and said
> that she could stand for only a half hour at
> a time. She stated that she could lift ten

15

> pounds. She also said that her medication
> helped her headaches, and that she rarely
> goes to the emergency [sic] for them. Her
> testimony as to her daily routine at the
> hearing is also inconsistent with what she
> told the consultative psychologist Dr. Volle
> (Exhibit 14F).

(Tr. 28).

Thus, granting more weight to the medical record and the other RFC assessments than to Dr. Perlin's opinion, the ALJ determined the RFC to be "work at the sedentary exertional level." (Tr. 30). Also, the ALJ found no significant non-exertional impairments, based on the psychological examination by Dr. Volle and the plaintiff's own testimony that she has no problems paying attention, remembering things, or getting along with other people (Tr. 28-29)

Finally, the ALJ found at step five that the Commissioner might establish "that there are other jobs existing in significant numbers in the national economy that the claimant can perform, consistent with her RFC, age, education, and work experience." (Tr. 29). See 20 C.F.R. § 404.1560(c). "When all of the criteria of a Medical-Vocational Rule are met, the existence of occupations in the national economy is met by administrative notice." (Tr. 30). See 20 C.F.R. § 404, Subpart P, Appendix 2, § 200.00(b). Using sections 201.19 and 201.20 of the Medical-Vocational Guidelines ("Grids") as a framework, the ALJ concluded that the plaintiff is not disabled.

In summary, the ALJ's findings were as follows:

1.  The claimant meets the non-disability requirements for a period of disability and disability insurance benefits set forth in Section 216(I) of the Social Security Act and is insured for benefits through the date of this decision.

2.  The claimant has not engaged in substantial gainful activity since the alleged onset of disability.

3.  The claimant's lumbar spine, degenerative changes at multiple levels, L4-L5 with degenerative disc disease at L2-L3, bulging disc at L4-L5; left leg pain, a perceptional disorder, and dysthymia, impairments that are "severe" within the meaning of the Regulations, but not "severe" enough to meet or medically equal, either singly or in part combination, one of the impairments listed in Appendix 1, Subpart P, Regulations No. 4. Her claimed depression is non-severe (20 CRF § 404.1521 and 416.921, and SSR 96-3p).

4.  These medically determinable impairments do not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4.

5.  The undersigned finds the claimant's allegations regarding her limitations are not totally credible for the reasons set forth in the body of the decision.

6.  The claimant has the following residual functioning capacity: she can engage in work at the sedentary exertional level, with occasional pushing/pulling with the left leg, and requires jobs with simple instructions and routine repetitive tasks. She has mild restrictions of activities of daily living, and in maintaining social functioning, mild to moderate difficulties in maintaining concentration, persistence, or pace, and no episodes of decompensation of extended durations.

7.  The claimant is unable to perform any of her past relevant work (20 CFR §§ 404.1565 and 416.965).

8.  The claimant is a "younger individual" (20 CFR §§ 404.1563 and 416.963).

9.  The claimant has a "limited education" (20 CFR §§ 404.1564 and 416.964).

10. The claimant has no transferable skills from semi-skilled work previously performed (20 CFR §§ 404.1568 and 416.968).

11. The claimant has the residual functioning capacity to perform a wide range of sedentary work (20 CFR §§ 404.1567 and 416.967).

12. Based on an exertional capacity for a wide range of sedentary work, and the claimant's age, education, and work experience, and using Medical-Vocational ["Grid"] Rule 201.19 and 201.20, Appendix 2, Subpart P, Regulations No. 4 as a framework for decision-making, the claimant is not disabled.

13. The claimant's capacity for sedentary work is substantially intact and has not been compromised by any non-exertional limitations. Accordingly, using the above-cited rule(s) as a framework for decision-making, the claimant is not disabled.

14. The claimant was not under a "disability," as defined under the Social Security Act, at any time through the date of this decision (20 CFR §§ 404.1520(g) and 416.920(g)).

(Tr. 30-31).


## STANDARD OF REVIEW

The Social Security Act provides for judicial review of the Commissioner's denial of benefits. 42 U.S.C. §1383(c)(3). This is not review de novo -- the Court may not decide facts, reweigh evidence or substitute its judgment for that of the Commissioner. See Dotson v. Shalala, 1 F.3d 571, 577 (7th Cir. 1993). Primarily, the Court reviews the decision to determine whether the Commissioner applied the correct legal standard. Tejada v. Apfel, 167 F.3d 770, 773 (2d Cir. 1999). See also Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir. 1987) (where the ALJ failed to apply correct legal principles, his finding cannot be upheld even if there is substantial evidence for it).

Secondly, the Court reviews whether the Commissioner's

determination was supported by substantial evidence. <u>Tejada</u>, 167
F.3d at 773 . "Substantial evidence" is evidence that a
reasonable mind would accept as adequate to support a conclusion;
it is "more than a mere scintilla." <u>Richardson v. Perales</u>, 402
U.S. 389, 401 (1971), <u>quoted in</u> <u>Pollard v. Halter</u>, 377 F.3d 183,
188 (2d Cir. 2004). The Court considers the entire
administrative record, including new evidence submitted to the
Appeals Council following the ALJ's decision. <u>Perez v. Chater</u>,
77 F.3d 41, 46 (2d Cir. 1996). To enable a reviewing court to
decide whether the determination is supported by substantial
evidence, the ALJ must set forth the crucial factors with
sufficient specificity. <u>Ferraris v. Heckler</u>, 728 F.2d 582, 587
(2d Cir. 1984). This includes a determination that the testimony
of any witness is not credible. <u>Williams ex rel. Williams v.</u>
<u>Bowen</u>, 859 F.2d 255, 260-61 (2d Cir. 1988).


DISCUSSION

Plaintiff raises three bases for reversal of the ALJ's
finding of no disability with an RFC of sedentary work. She
first argues that the ALJ relied upon factual errors in his
interpretation of the record. [Doc. #16, attachment #1 at 13, 15,
17] Second, she argues that the ALJ incorrectly applied legal
principles in assigning relative weight to certain medical
opinions and in assessing the plaintiff's credibility to
determine the plaintiff's RFC. [Doc. #16, attachment #1 at 21,
28] . Finally, she argues that the ALJ should not have used the

19

grids framework to determine whether appropriate jobs were
available to the plaintiff because plaintiff has non-exertional
limitations. [Doc. #16, attachment #1 at 26]


A. Reliance upon Proper Evidence

Plaintiff has alleged that some evidence was ignored,
mistaken, or improperly relied upon by the ALJ, and argues that
the case must be remanded. The ALJ is charged with the duty of
weighing the evidence of record, resolving any material conflicts
in the evidence and testimony. See Richardson v. Perales, 402
U.S. 389, 399 (1971), cited in Stevens v. Barnhart, 473 F. Supp.
2d 357, 364 (N.D.N.Y. 2007).

1.    Completeness of the Record

Plaintiff alleges that the ALJ relied upon an incomplete
record. Plaintiff's phyiscal therapy provider was Dr. Xu's
practice, called Advanced Health Professionals. Exhibit 8F (Tr.
168-174); Exhibit 9F (Tr. 175-187). However, the Reconsideration
Denial Notice issued to Ms. Burden on May 15, 2004, from
Disability Determination Services ("DDS") misidentified the
physical therapy clinic in the report received 03/17/2004,
calling it "ADVANCED CENTER FOR REHABILITATION MEDICINE
["ACRM"]." Exhibit 4B; (Tr. 42). Plaintiff seizes upon the
typographical error to suggest that there are records from ACRM
that the ALJ neglected to include in the record, but because the
plaintiff never received therapy from ACRM, this allegation is

baseless.

2.  Alleged Factual Errors

Plaintiff seizes upon other typographical errors as well, both in the record and in the ALJ's ruling, to assert that the ALJ was confused and did not give the plaintiff a full and fair hearing as required by due process. See Yancey v. Apfel, 145 F.3d 106, 112 (2d. Cir. 1998).  However, none of these typos affected the ALJ's analysis. The first error identified by plaintiff is in the record index, where Exhibit 9F is listed "from Jerold M. Perlman, M.D." when it should read "from Jianchao Xu, M.D." (Tr. 3); however, the ALJ correctly noted in his opinion that Exhibit 9F was from Dr. Xu. (Tr. 24). Second, plaintiff notes that the ALJ misidentified a statement by Dr. Perlin as "Dr. Perlman's conclusory statement," but taken in context he clearly attributes the conclusion to Dr. Perlin. (Tr. 27). Therefore, these errors are irrelevant and the Court finds that plaintiff's allegation of confusion is not supported by the record.

Next, the plaintiff incorrectly alleges "misstatements" on two points that the ALJ quoted directly from the record. The plaintiff contends that she has "moderate" difficulties maintaining concentration, persistence and pace, whereas the ALJ stated that she has "mild to moderate" difficulties. (Tr. 28). The ALJ's statement simply combines the assessments of two agency psychiatrists, in which Dr. Doherty opined that plaintiff had "mild" difficulties in this area while Dr. Hill called it "moderate" difficulty. (Tr. 214, 240). Also, the plaintiff

disputes the ALJ's statement that the plaintiff's "memory is excellent," but this is a direct quote of the findings of psychologist Dr. Volle. (Tr. 202). The ALJ is charged with the duty of weighing the evidence of record. Richardson, 402 U.S. at 399. Here, where he has quoted directly from the record, plaintiff's allegations of misstatement are unsupported.

The plaintiff also inaccurately imputes contradictions in her own testimony to the ALJ. First, as the ALJ noted, the plaintiff contradicted herself when she stated twice that she could stand for "four to five hours" (Tr. 425, 435) but later back-tracked and said that she could stand only for half an hour (Tr. 436). Now she faults the ALJ for adopting the higher estimate, despite the fact that it is his responsibility to resolve material conflicts in testimony. See Richardson, 402 U.S. at 399. Regardless, this detail is irrelevant to a RFC finding of sedentary work, which does not require more than occasional standing or walking. See 20 C.F.R. §§ 420.1567(a), 416.967(a).

Another contradiction in plaintiff's testimony regarded whether she could meet the ten-pound lifting minimum of sedentary work. See id.. When asked if she could lift ten pounds, the plaintiff was uncertain as to what would weigh that amount. Plaintiff's attorney suggested a "bag of potatoes," and the plaintiff agreed that she could lift that. (Tr. 434). On appeal, the plaintiff asserts that a bag of potatoes can weigh five pounds, and thus argues the ALJ should not have relied upon this testimony. However, potatoes are also sold in ten-pound bags, so

22

any confusion on this point must be imputed to the plaintiff and her attorney who suggested that measurement. Again, the ALJ has properly discharged his duty of weighing material conflicts in the evidence, relying upon substantial evidence to do so. See Richardson, 402 U.S. at 399. Plaintiff's allegations of factual error are unsupported.

### 3. Characterization of the Facts

Plaintiff contends that the ALJ should not have identified her lower back and leg pain as "stable." (Tr. 24, 28). She asserts that the ALJ "minimizes the severity" of her lower back pain and her migraine headaches, which she claims are incapacitating. Nevertheless, the record shows that the plaintiff's condition was stabilized. In fact, Dr. Sood administered the last epidural steroid injection on March 5, 2004 (Tr. 226), with follow-up visits from April 4, 2004 to August 8, 2005 (Tr. 375-394). The treatment record and medication log (Tr. 392) for this period shows a steady regimen of 10 mg of Oxycodone per day, which plaintiff reported to Dr. Sood on August 8, 2005 "helps a lot" (Tr. 391). (Tr. 375-394). Also, Dr. Perlin, plaintiff's primary care physician, saw her four times in 2004-2005, and never to address lower back pain. (Tr. 323-324 (migraine), 325-328 (cervical spine and left arm pain), 329 (urinary tract infection)). This record supports the ALJ's characterization of "stable."

Concerning the migraine headaches, the ALJ noted that the plaintiff "rarely goes to the emergency for them [sic]" (Tr. 28).

23

This does not minimize their severity. The plaintiff testified that she had headaches twice a week, which normally resolve with medication (Tr. 428-429), and the records show only three emergency room visits from March to November of 2004 and none in 2005 before the June 17, 2005 hearing. (Tr. 349-368). Thus, both plaintiff's testimony and the medical record support the ALJ's summary of the evidence, not the plaintiff's.

Plaintiff also asserts that the ALJ ignored a diagnosis of depression, which she claims would have led to a finding of disability. No such diagnosis exists. In Finding #3, the ALJ noted that the plaintiff's impairments, including moderate dysthymia (Tr. 28), "are 'severe' within the meaning of the Regulations, but not 'severe' enough to meet or medically equal" a listed impairment from Appendix 1, Subpart P, Regulation No. 4. (Tr. 30). He also noted that "[h]er claimed depression is non-severe (20 CFR § 404.1521 and 416.921, and SSR 96-3p)." (Tr. 30). The plaintiff contends that because depression is a symptom of dysthymia and the ALJ included dysthymia among her "impairments which are 'severe'" (Tr. 30), then she must suffer from severe depression. However, the American Psychiatric Association defines dysthymic disorder as a chronic depression that is less severe than major depression. AMERICAN PYSCHIATRIC ASS'N, DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS (DSM-IV) 345-349 (1994). By diagnosing "moderate dysthymia" (Tr. 203), psychologist Dr. Volle was ruling out a diagnosis of major depression, and thus the ALJ's characterization of the claimed depression as non-severe is

24

supported by the record. Moreover, plaintiff provided no other treatment records for depression. Her sole evidence is from Dr. Volle, a consultative psychologist. (Tr. 200-203).

Therefore, the Court is not persuaded that the ALJ either made or relied upon any factual errors in his interpretation of the facts in the record, and finds that he properly relied upon the record as substantial evidence for his findings.

B.  The ALJ's Legal Analysis

1.  Treating Physician Rule

Having sustained the ALJ's reliance upon proper evidence, the Court turns to his legal analysis. Plaintiff argues that the ALJ did not properly defer to the medical opinions of certain treating physicians per the "treating physician rule" promulgated in 20 C.F.R. § 404.1527(d), 416.927(d), and SSR 96-2p. Per the regulations, "[g]enerally we give more weight to opinions from your treating sources." 20 C.F.R. § 404.1527(d)(2). However, the Second Circuit has upheld the validity of regulations codifying the rule, which grant a treating physician's opinion controlling weight only if well-supported by medical and laboratory findings and not inconsistent with other substantial evidence. Schisler v. Sullivan, 3 F.3d 563, 568 (2d Cir. 1993), cited in Halloran v. Barnhart, 362 F.3d 28, 32 (2d Cir. 2004). Pertinent evidentiary factors include the length of the treatment relationship, the frequency of examination, and the nature and extent of the treatment relationship. 20 C.F.R. § 404.1527(d)(2). The ALJ must

give "good reasons" for the weight he gives a treating source's opinion. <u>Halloran</u>, 362 F.3d at 33; <u>see also</u> <u>id.</u>.

Here plaintiff contends that the ALJ rejected the opinions of three treating physicians, Dr. Xu, Dr. Sood, and Dr. Perlin. As regards the first two, the plaintiff has misinterpreted what distinguishes a medical opinion from intake notes that merely record a patient's reported symptoms and reasons for seeking treatment. In his final report Dr. Xu noted plaintiff self-reported complaints/symptoms. (Tr. 283). These are clearly marked as the plaintiff's opinion and are separated from the physician's clinical findings, so they are not an opinion and have no bearing on the case. <u>See</u> 20 C.F.R. § 404.1527(d)(2) (opinions are the physician's judgment of the issues of the nature and severity of the impairment). As for Dr. Sood, the plaintiff contends that he repeatedly described her as "disabled." However, this notation is listed under "work status" and is noted separately from the doctor's clinical assessments, which indicate that it is not a medical opinion but rather a notation that the plaintiff was unemployed. (Tr. 377-391). Even if it were intended as a medical opinion, "[a] treating physician's statement that the claimant is disabled cannot itself be determinative" because that determination is reserved to the Commissioner. <u>Snell v. Apfel</u>, 177 F.3d 128, 133 (2d Cir. 1999); <u>see also</u> 20 C.F.R. §§ 404.1527(e)(1) and 416.927(e)(1). Therefore, the ALJ did not reject the medical opinions of these two doctors as alleged, but rather incorporated only the parts of their record that qualify

as medical opinions.

The ALJ, however, did reject the RFC assessment of treating physician Dr. Perlin from June 23, 2005 (Tr. 371-375), calling it "inconsistent with other substantial evidence of the record to the contrary" (Tr. 28). He supported this with a detailed rationale, as required by the "treating physician rule." See 20 C.F.R. § 404.1527(d)(2); Halloran, 362 F.3d at 33. Dr. Perlin had not seen the plaintiff for four months when he completed this assessment. (Tr. 327-329). He opined that she can stand for only one hour and sit for only two, as well as having other significant functional limitations in movement, posture, and physical functions. (Tr. 371-375). He attributes this to osteoarthritis, despite only once assessing the plaintiff's complaint as osteoarthritis in February 2004 and performing no follow-up examination after that time. (Id.). The ALJ noted that this is inconsistent with the record. (Tr. 27).

Notably, no other physician who examined Ms. Burden and her laboratory tests (x-ray, MRI, and CT scan) opined that she suffered from osteoarthritis. Dr. Perlman's impression was trochanteric bursitis that improved with Vioxx, and he recommended only physical therapy. (Tr. 197). Dr. Spellman found left lumbosacral root irritation and disc bulge, without disc herniation or lumbosacral radiculopathy. (Tr. 281). Dr. Sood noted that plaintiff's pain was stabilized and improved with medication. (Tr. 375-394). And Dr. Xu opined that the plaintiff only required an active therapeutic home exercise program. (Tr.

282-285). Plaintiff herself testified that she can stand for four to five hours, and lift ten pounds, although she later contradicted this testimony. (Tr. 425, 435). Thus, the physical limitations that Dr. Perlin found do not comport with the record.

Dr. Perlin also opined that the plaintiff is limited in hearing, speaking, and seeing due to osteoarthritis, and marked that the plaintiff could not tolerate such environmental conditions as chemicals, dust, fumes, humidity, etc. (Tr. 373-374).

These assessments are inconsistent both with Dr. Perlin's office notes and the record as a whole, including the plaintiff's own testimony, and therefore are entitled to less weight. See Snell, 177 F.3d at 133; 20 C.F.R. §§ 404.1527(d) and 416.927(d). Given these inconsistencies and the ALJ's detailed rationale for granting less deference to Dr. Perlin's opinion, the Court agrees that his opinion did not merit controlling weight.

### 2. Credibility Assessment

Plaintiff argues that in determining her RFC, the ALJ failed to properly evaluate the plaintiff's credibility. The function of the Commissioner includes evaluating the credibility of all witnesses, including the claimant. See Carroll v. Secretary of Health and Human Services, 705 F.2d 638, 642 (2d Cir. 1983). Although the Commissioner is free to accept or reject the testimony of any witness, a "finding that the witness is not credible must nevertheless be set forth with sufficient

specificity to permit intelligible plenary review of the record."
Williams ex rel. Williams v. Bowen, 859 F.2d 255, 260-61 (2d Cir.
1988) (citing Carroll, 705 F.2d at 643). The ALJ's findings must
be consistent with the other evidence in the case. Id. at 261.
See also 20 C.F.R. §§ 404.1529(a), 416.929(a).

In making a disability determination, all symptoms,
including pain, must be considered. 20 C.F.R. § 404.1529(a). In
evaluating subjective symptoms, a claimant's statements are to be
considered only to the extent that they are consistent with
medical evidence. 20 C.F.R. §§ 404.1529(a), 416.929(a). However,
statements about the intensity and persistence of pain and
symptoms will not be rejected simply because the objective
medical evidence does not support the claim. 20 C.F.R. §
404.1529(c)(2). Other factors which will be considered include
the claimant's medical history, diagnoses, daily activities,
prescribed treatments, efforts to work, and any functional
limitations or restrictions caused by the symptoms. See 20
C.F.R. § 404.1529(c)(3). In addition,

> [t]he determination or decision must contain
> specific reasons for the finding on
> credibility, supported by evidence in the
> case record, and must be sufficiently
> specific to make clear to the individual and
> to any subsequent reviewers the weight the
> adjudicator gave to the individual's
> statements and the reasons for that weight.

SSR 96-7p[8].

The ALJ gave specific reasons for finding that the

---

[8] Available at
http://www.ssa.gov/OP_Home/rulings/di/01/SSR96-07-di-01.html.

plaintiff's testimony was not fully credible, particularly that her testimony contradicts both itself and plaintiff's own reports to her treating physicians. (Tr. 28). As described above, she said at one point that she could stand for four to five hours at a time and then later reduced that estimate to half an hour. (Tr. 28). Also, she told psychologist Dr. Volle that she engages in domestic chores such as some cooking, laundry, and cleaning (Tr. 201), but testified at the hearing that she cannot perform such tasks (Tr. 433), which the ALJ noted (Tr. 28). She also stated that she has no problems paying attention, remembering things, or getting along with other people, see Exhibit 9E, but later testified that she can't socialize, even with her children (Tr. 431-432), which the ALJ also noted (Tr. 29). Based on these contradictions, the Court finds substantial evidence for the ALJ's credibility finding.

Furthermore, the ALJ does give credit to the plaintiff's subjective complaints of pain insofar as they comport with the rest of the record. Although not finding her completely disabled, he found that plaintiff is unable to perform her past work and has a limited functional capacity of work at the sedentary level. (Tr. 29). The MRI of August 2003 showed MRI showed only a mild L3-4 and L4-5 disc bulge, without disc herniation, which was consistent with sciatic pain in her leg per Dr. Xu. (Tr. 168). Dr. Perlman reported improvement in September of 2003, with normal straight leg raising. (Tr. 197). The notes of Dr. Xu, Dr. Perlman, and Dr. Sood all mention improvement and stabilization

of pain through physical therapy and medication. (Tr. 180, 197, 282-284, 375-394). Therefore, the ALJ's finding of functional limitation but no disability is consistent with the medical record, despite plaintiff's allegations to the contrary.

Plaintiff takes particular issue with the ALJ's note that she "no visible discomfort at the hearing." (Tr. 28). Such a "sit and squirm" test is not considered a reliable index of credibility. See Aubeuf v. Schweiker, 649 F.2d 107, 113 (2d Cir. 1981). However, the ALJ may give limited weight to his observation of the claimant. Schaal v. Apfel, 134 F.3d 496, 502. See also 20 C.F.R. § 404.1529(c)(3). In plaintiff's case, the ALJ's observation was not dispositive but rather one of many factors; therefore, it properly contributed to his negative credibility assessment.

Plaintiff also argues that she is credible because she had a perfect score on the Rey's test for malingering administered by psychologist Dr. Volle on December 4, 2003. (Tr. 203). This indicated that she was not consciously exaggerating problems to receive better consideration for her claim. (Id.). In fact, the ALJ did give credence to the information she relayed to Dr. Volle at that time, including his findings of dysthymia and functional limitations in persistence and pace. (Tr. 28). However, the Rey's test does not verify as truthful that plaintiff's hearing testimony, which she provided a year-and-a-half later and which the ALJ discredited because the plaintiff contradicted herself. Furthermore, it is noteworthy that plaintiff filed two prior

claims for disability in 1994 and 1998, but continued working
after each was denied. (Tr. 66-67).

Also, plaintiff asserts that her positive evaluation from
her last employer entitles her to substantial credibility. "A
good work record may be deemed probative of credibility." Schaal,
134 F.3d at 502. See also 20 C.F.R. § 416.929. Plaintiff's former
employer, Greenwich Country Day School, called her an "exemplary
employee" except for a few issues with lateness. (Tr. 121-123).
Per Schaal, however, the employer's evaluation cannot be
considered dispositive in determining her credibility. 134 F.3d
at 502. Furthermore, the ALJ did not deem her completely
incredible, just not disabled.

Finally, plaintiff argues that the ALJ incorrectly ignored
the written testimony of a corroborating witness. "As a fact-
finder, an ALJ is free to accept or reject testimony like that
given by [a lay witness]. A finding that the witness is not
credible must nevertheless be set forth with sufficient
specificity to permit intelligible plenary review of the record."
Williams, 859 F.2d at 260-261 (citing Carroll, 705 F.2d at 643).
In plaintiff's case, her friend William Roberson completed a
third-party function report form on April 4, 2004, in which he
corroborated plaintiff's statement that she does not cook and has
trouble with household chores, which he attributed to back
problems and drowsiness from medication. (Tr. 124-131). The ALJ
declined to include this in his opinion.

The plaintiff is incorrect to assert that the ALJ was

required to assess the witness's credibility. Although in Williams, the Second Circuit found fault with the fact that the ALJ ignored lay witnesses, that case is distinguished from the present case on two points. First, in Williams, the witness's testimony was "uncontradicted and generally consistent with the medical diagnoses," 859 F.2d at 260, whereas in the present case Mr. Roberson's testimony is contradicted by the plaintiff's testimony and by the medical treatment records and diagnoses described above. Second, because the testimony in Williams was in line with the medical record and was critical to the finding, its exclusion fatally undermined the ALJ's claim of substantial evidence for a finding of no disability. Id.. In the present case, however, Mr. Roberson's testimony is substantially outweighed by the rest of the record, and therefore is not critical to the disability determination.

Therefore, the Court agrees with the ALJ's applications of the legal principles regarding the plaintiff's credibility, and finds that the ALJ relied upon substantial evidence to arrive at his finding of no disability.


C.   The Medical-Vocational "Grids" Framework

The plaintiff's final argument is that the ALJ improperly applied the grids to determine whether significant jobs were available that the plaintiff could perform at her RFC. Under the Social Security Act, the Commissioner bears the burden of proof for the fifth and final step of the disability determination. The

33

grids take into account a claimant's RFC, age, education, and
work experience. See 20 C.F.R. Pt. 404, Subpt. P, App. 2, §
200.00(a); 20 C.F.R. § 404.1569a(a). "'Generally speaking, if a
claimant suffers only from exertional impairments, e.g., strength
limitations, then the Commissioner may satisfy her burden by
resorting to the applicable grids. For a claimant whose
characteristics match the criteria of a particular grid rule, the
rule directs a conclusion as to whether he is disabled.'" Rosa
v. Callahan, 168 F.3d 72, 82 (2d Cir. 1999) (quoting Pratts v.
Chater, 94 F.3d 34, 38-39 (2d Cir. 1996)). However,

> where the claimant's work capacity is
> significantly diminished beyond that caused
> by his exertional impairment the application
> of the grids is inappropriate. By the use of
> the phrase "significantly diminish" we mean
> the additional loss of work capacity beyond a
> negligible one or, in other words, one that
> so narrows a claimant's possible range of
> work as to deprive him of a meaningful
> employment opportunity.

Bapp v. Bowen, 802 F.2d 601, 605-06 (2d Cir. 1986), quoted in
Rosa, 168 F.3d at 82.

Here the plaintiff argues against the ALJ's RFC finding,
which states that Ms. Burden's "capacity for sedentary work is
substantially intact and has not been compromised by any non-
exertional limitations." (Tr. 31). Based on 20 C.F.R.
§404.1569a(c), non-exertional limitations might include
depression, difficulty maintaining attention or concentrating,
difficulty performing the manipulative or postural functions, and
related symptoms such as pain. The plaintiff and one treating
physician, Dr. Perlin, claim that plaintiff has such non-

exertional limitations. (Tr. 371-374). However, as noted previously, the ALJ granted less weight to these sources because of their inconsistency with the record. As previously noted, the medical record indicates that the plaintiff does not suffer debilitating depression.

Furthermore, the ALJ does not find that the plaintiff suffers no non-exertional limitations, but rather that her non-exertional limitations do not compromise her capacity for sedentary work. (Tr. 31). For example, he finds that the plaintiff has mild to moderate limitations in maintaining concentration, persistence, and pace (Tr. 28, 31), and that she has moderate dysthymia (Tr. 30). But her non-exertional limitations do not meet the "significantly diminish" standard set forth in Bapp. 802 F.2d at 606. The ALJ relied upon substantial evidence for this RFC determination, as required. See Richardson, 402 U.S. at 401. The Court sustains the ALJ's finding that there were no incapacitating non-exertional limitations that would prevent the ALJ's use of the grids to find other work available to the plaintiff.

Therefore, the Court finds no cause for remand.


CONCLUSION

Plaintiff's Motion for Judgment on the Pleadings [Doc. #16] is **DENIED** and Defendant's Motion to Affirm the Decision of the Commissioner [Doc. #21] is **GRANTED**.

Any objections to this recommended ruling must be filed with the Clerk of the Court within ten (10) days of the receipt of this order. Failure to object within ten (10) days may preclude appellate review. <u>See</u> 28 U.S.C. § 636(b)(1); Rules 72, 6(a) and 6(e) of the Federal Rules of Civil Procedure; Rule 2 of the Local Rules for United States Magistrates; <u>Small v. Secretary of H.H.S.</u>, 892 F.2d 15 (2d Cir. 1989) (per curiam); <u>FDIC v. Hillcrest Assoc.</u>, 66 F.3d 566, 569 (2d Cir. 1995).

ENTERED at Bridgeport this 26th day of August 2008.

___/s/_____
HOLLY B. FITZSIMMONS
UNITED STATES MAGISTRATE JUDGE