UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| PEGGY BURDEN,<br>    Plaintiff,<br><br>v.<br><br>MICHAEL J. ASTRUE<br>COMMISSIONER,<br>SOCIAL SECURITY ADMINISTRATION<br>    Defendant. | :<br>:<br>:   CIVIL ACTION NO.<br>:   3:07-cv-642 (JCH)<br>:<br>:<br>:<br>:   NOVEMBER 25, 2008<br>: |

**RULING RE: PLAINTIFF'S OBJECTIONS TO THE
MAGISTRATE JUDGE'S RECOMMENDED RULING [Doc. No. 27]
DETERMINING PENDING MOTIONS [Doc. Nos. 16, 21] AND
DEFENDANT'S MOTION TO STRIKE [Doc. No. 28]**

**I.     INTRODUCTION**

Plaintiff, Peggy Burden, brings this action pursuant to § 1631(c)(3) of the Social Security Act, as amended, 42 U.S.C. § 1383(c)(3), requesting review of a final decision by defendant, the Commissioner of Social Security ("Commissioner"), that Burden is not disabled and therefore not entitled to Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI").  On August 26, 2008, Magistrate Judge Holly B. Fitzsimmons issued a Recommended Ruling, denying Burden's Motion to Reverse the Decision of the Commissioner ("Motion to Reverse") and granting the defendant's Motion to Affirm the Decision of the Commissioner ("Motion to Affirm").  Burden now objects to the Recommended Ruling, arguing that the Magistrate Judge impermissibly conducted a <u>de novo</u> review and analysis of the evidence of record.  The court disagrees.

For the reasons stated below, the Magistrate Judge's Recommended Ruling [Doc. No. 23] is **AFFIRMED, ADOPTED,** and **RATIFIED**.  Plaintiff's Motion to Reverse

the Decision of the Commissioner [Doc. No. 16] is **DENIED**, and defendant's Motion to Affirm the Decision of the Commissioner [Doc. No. 21] is **GRANTED**. Defendant's Motion to Strike [Doc. No. 28] is **DENIED AS MOOT**.

II.     STANDARD OF REVIEW

As a preliminary matter, a district court reviews, de novo, those portions of a magistrate judge's recommended ruling to which an objection is made. The court may adopt, reject, or modify, in whole or in part, the magistrate judge's recommended ruling. See 28 U.S.C. § 636(b)(1)(c); Fed. R. Civ. P. 72(b)(3).

In review of a Social Security disability determination, a court will set aside the decision of an administrative law judge ("ALJ") "only where it is based upon legal error or is unsupported by substantial evidence." Balsamo v. Chater, 142 F.3d 75, 79 (2d Cir. 1998). As the Supreme Court has instructed, substantial evidence means more than a "mere scintilla." Richardson v. Perales, 402 U.S. 389, 401 (1971) (internal quotation and citation omitted). Rather, substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id. Further, the substantial evidence rule also applies to inferences and conclusions that are drawn from findings of fact. See Gonzalez v. Apfel, 23 F. Supp. 2d 179, 189 (D. Conn. 1998). In its review, a court may not decide facts, re-weigh evidence, or substitute its judgment for that of the Commissioner. See Reyes v. Harris, 486 F. Supp. 1063, 1067 (S.D.N.Y. 1980).

Under this standard of review, absent an error of law, a court must uphold the Commissioner's decision if it is supported by substantial evidence, even if the court

might have ruled differently. See Eastman v. Barnhart, 241 F. Supp. 2d 160, 168 (D. Conn. 2003).

### III. BACKGROUND

   A.   Summary of Facts

Burden claims she became disabled on June 7, 2003 due to lower back pain, left leg pain, and depression. Certified Transcript of the Proceedings ("Tr.") 23. The symptoms, effects, and treatment of Burden's ailments are described, in great detail, in the Recommended Ruling. Consequently, only the most relevant facts are recited here.

Peggy Burden was born on August 20, 1962, and was forty-three years old when the ALJ issued his decision in November 2005. Tr. 34. She has an eleventh grade education, with additional training as a Certified Nurse's Aide. Tr. 79, 424. She has past relevant work experience as a nurse's aide and a teacher's assistant at a daycare facility. Tr. 74, 86-87, 95-96, 437-438. She has applied for disability benefits twice before, in 1994 and 1998, and continued working after each claim was denied. Tr. 66-67.

Burden is the survivor of two severe motor vehicle accidents. Tr. 200. The first occurred when she was nine years old, when a car ran over both of her legs causing severe damage. Id. As a result of this accident, Burden has a metal plate in place of her right shin bone. Id. She has a slight limp and occasionally uses a cane to walk. Id.

The second accident is the incident that led to Burden's current complaints of debilitating pain. The accident occurred on December 9, 2002, when a car she was driving was rear-ended. Tr. 279. Burden was seen at the Norwalk Hospital emergency room following the accident, and x-rays of her spine showed some degenerative

changes but no fractures. Tr. 147-151. On December 10, 2002, Dr. Jianchao Xu diagnosed strain/sprain of the cervical spine, thoracic spine, and lumbar spine, and recommended physical therapy, which Burden attended from December 2002 through September 2003. Tr. 170-173, 175-185.

In January 2003, Burden returned to her position as a teacher's assistant at a daycare facility, where she remained until the school year ended in June. Tr. 121-123. In February 2003, the physical therapist noted Burden's improvement and visits were scheduled less often. Tr. 180.

In late July 2003, Dr. Gerald Perlman saw Burden for pain in the left leg radiating to the ankle. Tr. 197. Dr. Perlman diagnosed trochanteric bursitis and sciatica, and prescribed Vioxx. Tr. 197.

Dr. Xu ordered a lumbar MRI in August 2003, which revealed an asymmetric left foraminal bulging at L3-4 and L4-5. Tr. 176. Dr. Xu referred Burden back to Dr. Perlman. Id. Dr. Perlman saw Burden in August and September 2003, and treated her for hip and back pain. Tr. 197. Burden did not return to her position as a teacher's assistant at the beginning of the 2003-2004 school year as expected. Tr. 121-123.

Also in September 2003, Dr. Edward Spellman conducted a neurological exam on Burden, finding her mental status to be normal, with no evidence of memory impairment or loss. Tr. 280. On October 28, 2003, Dr. Xu determined that Burden had reached her maximum medical improvement, and conducted a final examination. Tr. 282-284. He instructed Burden to continue a home stretching and exercise program, and suggested that steroid injections might be indicated in the case of future flare-ups. Tr. 284.

From late 2003 to August 2005, Burden saw Dr. Pardeep Sood every few months for back pain. Tr. 375-391. Dr. Sood performed multiple lumbar epidural injections, and prescribed Oxycodone. Tr. 198, 226-227, 393.

During the relevant period, Burden also complained of migraine headaches. Tr. 345, 397. She was treated for migraines in the Norwalk Hospital emergency room on multiple occasions in 2004. Tr. 310-318, 349-359, 360-370. She followed up with her primary care physician, Dr. Martin Perlin, who diagnosed non-intractable migraine and instructed Burden to use Imitrex as needed. Tr. 323-324, 345. Dr. Perlin also saw Burden for cervical spine and left arm pain, which he diagnosed as radiculitis in 2004 and osteoarthritis in February 2005. Tr. 325-329.

Regarding Burden's mental health, she was evaluated by consultative psychologist Dr. Frank Volle in December 2003. Tr. 200-203. Dr. Volle estimated that Burden was of low-average intelligence; had mildly impaired attention and repetition; and had excellent memory. Tr. 200-202. Dr. Volle noted a perceptual disorder and probable borderline organic disorder, which he attributed to mild brain damage from Burden's motor vehicle accidents. Id. Dr. Volle found no evidence of a thought disorder or psychosis. Id.

B.  Procedural History

Burden filed an application for DIB and SSI on September 4, 2003, alleging disability with an onset of June 7, 2003. Tr. 61-63, 401-403. Burden's claim was denied initially on December 23, 2003, and denied on reconsideration on May 15, 2004. Tr. 33-39, 42-45. Burden subsequently requested an administrative hearing, which was held before ALJ Robert Di Biccaro on June 17, 2005. Tr. 414-442. On November 22,

2005, the ALJ issued a decision in which he found that Burden was not disabled.  Tr. 22-32.

On December 20, 2005, Burden filed a request for review of the ALJ's decision.  Tr. 15.  On February 3, 2007, the Appeals Council denied Burden's request for review, and on March 28, 2007, denied reconsideration of their decision.  Tr. 11-13, 6-7.  Consequently, the ALJ's November 22, 2005 decision is the final decision of the Commissioner, subject to judicial review.

On April 23, 2007, Burden filed the current action in the District of Connecticut, and on August 26, 2008, Magistrate Judge Fitzsimmons issued the Recommended Ruling.  Burden objected to the Recommended Ruling on September 26, 2008, and the court now addresses that objection.

  C. ALJ's Disability Determination

The Social Security Act provides that every individual who suffers from a disability is entitled to disability insurance benefits.  See 42 U.S.C. § 423(a)(1).  A disability is defined as, "an inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).

Under the Social Security Act, the Social Security Administration (the "administration") has established a five-step, sequential evaluation process for determining whether an individual is disabled.  See 20 C.F.R. § 416.920(a).  The steps are followed in order.  If at any step it is determined that the claimant is or is not disabled, the evaluation ends without proceeding to the next step.

At step one, the Commissioner must determine whether the claimant is engaged in substantial gainful activity. See 20 C.F.R. § 416.920(b). Generally, if an individual has earnings from employment or self-employment above a level set out in the regulations, it is presumed that that individual has demonstrated the ability to engage in substantial gainful activity. See 20 C.F.R. §§ 416.974-5. If the claimant is not engaged in substantial gainful activity, the evaluation proceeds to step two.

At step two, the Commissioner must determine whether the claimant has a medically determinable impairment that is "severe" or a combination of impairments that is "severe." See 20 C.F.R. § 416.920(c). An impairment or combination of impairments is "severe" within the meaning of the regulations if it significantly limits an individual's ability to perform basic work activities. If the claimant has an impairment or combination of impairments that is "severe," the evaluation proceeds to step three.

At step three, the Commissioner must determine whether the claimant's impairment or combination of impairments meets or medically equals the criteria of an impairment listed in the appendix to the regulations. See 20 C.F.R §§ 416.920(d), 416.925-6. If the claimant's impairment or combination of impairments meets or medically equals the criteria of a listing, and meets a duration requirement, the claimant is disabled. If not, the evaluation proceeds to step four.

At step four, the Commissioner must determine the claimant's residual functioning capacity ("RFC") and then determine whether the claimant has the RFC to perform the requirements of the claimant's past relevant work. See 20 C.F.R. §§ 416.920(e), 416.920(f). If the claimant has the RFC to perform past relevant work, the claimant is not disabled. If the claimant is unable to perform any past relevant work, the

evaluation proceeds to the fifth and last step.

At step five, the Commissioner must determine whether the claimant is able to perform any other work, taking into consideration the claimant's RFC, age, education, and work experience. See 20 C.F.R. § 416.920(g). If the claimant is not able to perform other work and meets the duration requirement, the claimant is disabled.

The burden of establishing a disability is on the claimant. Once the claimant meets the burden for the first four steps of the disability evaluation, however, the burden then shifts to the Commissioner for the fifth step. See Balsamo, 142 F.3d at 80.

In the present case, in the November 22, 2005 decision, the ALJ found that Burden satisfied the first two steps of the disability evaluation. Tr. 30. The ALJ then found that Burden's impairments do not meet or equal the severity of any impairment listed in the appendix to the regulations. Id. At step four, the ALJ assessed Burden's RFC and found that she is not able to perform any past relevant work. Id. Finally, at step five, the ALJ found that Burden "has the ability to engage in a wide range of sedentary work," and that "there are a significant number of jobs in the national economy that the claimant can perform . . . . " Tr. 30. Consequently, the ALJ concluded that Burden is not disabled. Id.

## IV. ANALYSIS

Burden now objects to the Recommended Ruling on the grounds that the Magistrate Judge made findings which were not made by the ALJ, cited evidence which was not mentioned by the ALJ, and stated rationales and reasons which were not set forth in the ALJ's decision. Specifically, Burden objects to the Recommended Ruling's treatment of six issues: 1) the treating physician rule; 2) alleged missing evidence; 3)

the credibility of a lay witness; 4) her migraine headaches; 5) her non-exertional limitations; and 6) the ALJ's use of the Medical-Vocational Guidelines. The issues will be addressed separately.

1. <u>The Treating Physician Rule</u>

Burden alleges that the Recommended Ruling made an error of law in concluding that the opinions of her treating physicians regarding her disability status are not entitled to controlling weight. Objection at 8-13. Specifically, she argues that, under the "treating physician rule," 20 C.F.R. § 404.1527, the opinions of Dr. Perlin, Dr. Xu, and Dr. Sood are entitled to controlling weight because they are "well supported by hundreds of pages of clinical findings and objective tests, and are not contradicted by any doctor who has treated Burden on a continuing basis." Objection at 9.

The treating physician rule is well established. "SSA regulations advise claimants that, 'a treating source's opinion on the issue(s) of the nature and severity of your impairment(s)' will be given 'controlling weight' if the opinion is 'well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record.'" <u>Green-Younger v. Barnhart</u>, 335 F.3d 99, 106 (2d Cir. 2003) (quoting 20 C.F.R. § 404.1527(d)(2)). For the rule to apply, however, the treating physician's opinion must be well supported and not inconsistent with other substantial evidence in the Record. <u>Id.</u>

With respect to Dr. Xu, the ALJ noted that:

Dr. Xu provided a functional capacity evaluation which was based on his examinations and treatments, the claimant's subjective self-support symptoms, progress over time, prolonged passive care (hot packs, massage) and a range of motion evaluation of her cervical and lumbar spine, and opined that the claimant requires only an active therapeutic homer exercise

program.

Tr. 28. In response to this finding, Burden argued in her Motion to Reverse that the ALJ erred because, in fact, "Dr. Xu concluded that Ms. Burden could sit for only an hour, and stand for only an hour, after which her pain would become too severe, and she could not tolerate riding in a car, lifting weights, or performing some household chores (Tr. 283)." Motion to Reverse at 22-23. The Magistrate Judge rejected this argument in the Recommended Ruling, concluding that, "the plaintiff has misinterpreted what distinguishes a medical opinion from intake notes . . . ." RR at 26. This court agrees.

On page 283 of the Record, the section of Dr. Xu's final report cited by Burden, Dr. Xu recorded the following:

> During her final examination on 10/28/03, Ms. Burden was reporting intermittent lumbosacral pain. She reported that her lower back pain would increase with . . . sitting greater than an hour [and] standing greater than an hour . . . . She reported that she could only lift light weights which would cause her low back pain, traveling by car would also aggravate her symptomatology. Because of her lower back pain she reported that she had difficulty performing some of her daily house chores.

Tr. 283. As the Magistrate Judge correctly explained, these statements from Dr. Xu's report are not his medical opinion, but rather his notes recording Burden's self-reported symptoms. Burden now argues that a claimant's self-reported symptoms are an "'essential diagnostic tool' and reliance on a patient's subjective symptoms does not in any way undermine a doctor's opinion." Objection at 9 (quoting <u>Green-Younger v. Barnhart</u>, 335 F.3d 99, 107 (2d Cir. 2003)). This argument, however, misses the point. While a claimant's self-reported symptoms are certainly an essential diagnostic tool, that does not automatically transform them into medical opinion. In this case, it is clear from the report that the statements Burden cites are not Dr. Xu's medical opinion, but

rather his transcription of Burden's chief complaints.  Consequently, the ALJ's summary of Dr. Xu's report does not constitute legal error, and the objection is overruled.

With respect to Dr. Snood, the ALJ found that, the "treatment record by Dr. Snood . . . indicated that the claimant's low back pain and left leg pain symptoms were stable with the use of pain medication."  Tr. 28.  In her Motion to Reverse, Burden objects to the ALJ's finding, arguing that, "despite physical therapy, numerous medications, and a spinal injection, Dr. Sood says that Ms. Burden's condition has not improved and he repeatedly describes her as 'disabled.'  Dr. Sood's opinion is well-supported by 24 pages of Dr. Sood's own clinical findings as well as by the X-rays, Ultrasound, and MRI, which he reviewed."  Motion to Reverse at 22.

In support of her contention that Dr. Sood repeatedly describes her as "disabled," Burden cites pages 379, 381, 383, 387, and 391 of the Administrative Record.  The Magistrate Judge considered these documents and explained that whenever Dr. Sood refers to Burden as disabled, "this notation is listed under 'work status,' and is noted separately from the doctor's clinical assessments, which indicate that it is not a medical opinion but rather a notation that the plaintiff was unemployed."  RR at 26.  This court agrees.  The documents upon which the word "disabled" appears are clearly intake notes from Dr. Sood's visits with Burden.  They are written next to notations such as, "Tobacco: Neg," and "Alcohol: Neg," which indicate that they are Burden's answers to Dr. Sood's inquiries, rather than the doctor's medical opinions.  Given that there is not substantial evidence to support a conclusion that it was Dr. Sood's opinion that Burden is disabled, the ALJ's summary of Dr. Snood's report is not legal error.  The objection concerning Dr. Snood is overruled.

-11-

Finally, the ALJ concluded that, "Dr. Perlin's RFC assessment cannot be given controlling weight, or even fully credited as representative of the claimant's overall physical functioning capacity because it is inconsistent with the other substantial evidence of record to the contrary." Tr. 28. Further, the ALJ listed the contrary evidence in the Record, specifically noting: 1) Dr. Perlman's report that, by September 2003, Burden was doing better and the straight leg raise exam was normal; 2) Dr. Spellman's report that Burden's examination showed no signs of major lumbrosacral radiculopathy; 3) Dr. Sood's indication that Burden's pain symptoms were stable with the use of medication; 4) Dr. Xu's opinion that Burden's symptoms had improved and required only an active therapeutic home exercise program; and 5) Burden's own testimony that she can stand for four to five hours and lift ten pounds, and that her medications and epidural injections have helped her pain symptoms. Tr. 27-28.

Burden now claims that the Magistrate Judge committed legal error by usurping the role of the ALJ. Objection at 10-13. Specifically, she contends that the Recommended Ruling "ascribes reasoning to the ALJ which is not indicated in the ALJ's decision." Id. at 11. This court disagrees. In the Recommended Ruling, the Magistrate Judge examined the entire Administrative Record to determine whether the ALJ's decision not to give Dr. Perlin's opinion controlling weight is supported by substantial evidence. The Magistrate Judge concluded that the ALJ's decision was so supported, and she gave the reasons for her conclusion. The court did not decide facts, re-weigh evidence, or substitute its judgment for that of the Commissioner. See Reyes v. Harris, 486 F. Supp. 1063, 1067 (S.D.N.Y. 1980). Consequently, the treatment of Dr. Perlin's opinion is not legal error, and the objection is overruled.

2. Missing Evidence

In her Motion to Reverse the Decision of the Commissioner, Burden argued that, at a minimum, the case should be remanded to the ALJ because the Administrative Record is missing essential evidence. Motion to Reverse at 16-17. Specifically, she notes that the administrative record does not contain a report from the Advanced Center for Rehabilitation Medicine ("ACRM"). Id. Burden expects this report to be in the Record because a May 15, 2004 Reconsideration Denial Notice, sent to her by the Administration, lists an ACRM report as a document used to decide her case. Tr. 42.

Magistrate Judge Fitzsimmons addressed this argument in the Recommended Ruling, noting that the Record shows that Burden never received physical therapy from ACRM. RR at 20. Rather, the Magistrate Judge explained that Burden attended physical therapy at Advanced Health Professionals. RR at 20. Advanced Health Professionals is associated with Dr. Xu's practice and is the physical therapy provider listed in Burden's disability report. Tr. 72. The Record contains treatment notes from Advanced Health Professionals, and the ALJ considered those notes in adjudicating Burden's application. Tr. 175-185.

Thus, in response to Burden's claim of missing evidence, the Magistrate Judge concluded that the Reconsideration Denial Notice had misidentified the physical therapy clinic. RR at 20. The court did not improperly decide facts or "substitute its own judgment for that of the Secretary," Jones v. Sullivan, 949 F.2d 57, 59 (2d Cir. 1991); rather, it scrutinized the entire Record to determine whether the ALJ's factual findings were supported by substantial evidence, exactly as it is required to do. See Balsamo v. Chater, 142 F.3d 75, 79 (2d Cir. 1998). The Magistrate Judge concluded

-13-

that the ALJ's reliance on the physical therapy records from Advanced Health Professionals is supported by substantial evidence in the Record, and this court agrees. The objection is overruled.

### 3. Credibility of the Lay Witness

William Roberson, a friend of Burden, completed a questionnaire on her behalf in which he corroborated the symptoms and limitations Burden claimed. Tr. 124-131. The ALJ did not address Roberson's testimony in the November 22, 2005 ruling. In the Motion to Reverse, Burden argued that ignoring Roberson's testimony constituted legal error, and the case should be remanded to the ALJ for a credibility determination regarding that testimony. The Magistrate Judge disagreed, ruling that the ALJ was not required to address Roberson's testimony. RR at 33. Specifically, the Magistrate Judge held that because the testimony of Roberson, a lay witness, was substantially outweighed by the rest of the Record, it was not critical to the disability determination, and therefore its credibility need not be assessed. Id. This court agrees.

In Williams ex rel. Williams v. Bowen, 859 F.2d 255 (2d Cir. 1988), the Second Circuit held that:

> As a fact-finder, an ALJ is free to accept or reject testimony like that given by [a lay witness]. A finding that the witness is not credible must nevertheless be set forth with sufficient specificity to permit intelligible plenary review of the record. The failure to make credibility findings regarding [the lay witness's] <u>critical</u> testimony fatally undermines the [defendant's] argument that there is substantial evidence adequate to support his conclusion that claimant is not under a disability.

(emphasis added). In Williams, the Second Circuit addressed a case in which the ALJ failed to make a credibility determination regarding testimony of a lay witness that was "uncontradicted[,] and generally consistent with the medical diagnoses" against which

-14-

the ALJ ruled.  Id. at 260.  Importantly, the testimony the ALJ ignored in Williams included the testimony of Loretta Williams, the claimant herself.

In reaching its decision, the Williams court relied on two earlier Second Circuit cases, Ferraris v. Heckler, 728 F.2d 582, 587 (2d Cir. 1984) (holding that, "the crucial factors in any determination must be set forth with sufficient specificity to enable us to decide whether the determination is supported by substantial evidence") (emphasis added) and Carroll v. Secretary of Health & Human Services, 705 F.2d 638, 643 (2d Cir. 1983) (noting that, "the ALJ . . . would normally be expected to note his rejection of [claimant's testimony] in whole or part").  Both Ferraris and Carroll were remanded because the ALJ did not address essential evidence: the opinion of the treating physician in the former, the testimony of the claimant in the latter.

Given this history, it follows that Williams supports the proposition that an ALJ must make a credibility finding of lay witness testimony only when that testimony is critical to the adjudication of an application.  Testimony is critical to the adjudication of an application when the failure to address such testimony undermines the ALJ's decision, e.g., when the testimony ignored is that of the claimant herself.  The reading of Williams that Burden would have the court adopt – namely, that an ALJ must always make a credibility determination of any lay witness testimony he encounters, regardless of the testimony's import – ignores considerations of administrative efficiency and economy.

In the present case, the ALJ's failure to make a credibility finding regarding Roberson's testimony does not undermine his decision that there is adequate substantial evidence to support a conclusion that Burden is not disabled.  The crucial

factor in that decision is the medical evidence contradictory to Dr. Perlin's opinion. Naturally, that contradictory evidence also undermines the credibility of Roberson's testimony, testimony which merely repeats Burden's claims in support of Dr. Perlin's opinion. Thus, after the ALJ found the contradictory evidence in the Record strong enough to discredit Dr. Perlin's opinion, Roberson's testimony was not critical to the adjudication of Burden's application. As a result, the ALJ's failure to address Roberson's testimony was not legal error, and the objection is overruled.

    4.    <u>Burden's Migraine Headaches</u>

With respect to her migraine headaches, Burden objects that the Recommended Ruling finds "specific facts which the ALJ did not find," thereby usurping the role of the ALJ, and constituting legal error. Objection at 6. Further, in her Objection, Burden argues for the first time that her migraine headaches are debilitating because they will cause her to have an unacceptable number of absences from any gainful employment for which she is qualified. <u>Id.</u> These arguments will be addressed separately.

With regard to the Magistrate Judge's alleged usurpation of the ALJ's role, the court finds Burden's argument lacks merit. The ALJ summarized the evidence in the Record by stating that, "[Burden] said that her medication helped her headaches, and that she rarely goes to the emergency room for them." Tr. 28. As previously discussed, it is the duty of the court to determine whether statements made by the ALJ are supported by substantial evidence in the Record. In this case, the Magistrate Judge reviewed the evidence in question, and noted that the Record only shows three emergency room visits by Burden from March to November of 2004 and none from January to June of 2005. RR at 24. Accordingly, the Magistrate Judge properly found

that the Record supported the ALJ's summary of the evidence. Thus, Burden's allegation of usurpation lacks merit, and the objection is overruled.

Concerning Burden's new argument that her headaches are debilitating because they would lead to an unacceptable number of absences from any employment for which she is qualified, this argument is waived because Burden never raised it prior to her Objection to the Recommended Ruling. Issues not raised before the Magistrate Judge, and therefore not addressed by her, may not properly be deemed "objections" to the Recommended Ruling. If this court were to consider these untimely arguments, it would unduly undermine the authority of the Magistrate Judge by allowing litigants the option of waiting until a Recommended Ruling has issued to advance additional arguments. See, e.g., Forman v. Artuz, 211 F. Supp. 2d 415, 419 (S.D.N.Y. 2000). Consequently, this argument is barred and the court will not consider it.

5.      Burden's Non-Exertional Limitations

Burden's objection concerning her non-exertional limitations is based upon the same usurpation reasoning she advanced in the previous argument concerning her migraine headaches. That is, Burden argues that because the ALJ summarily concluded that Burden has mild to moderate difficulties in maintaining concentration, persistence, and pace, the Magistrate Judge usurped the role of the ALJ – thereby committing legal error – when she found that, "the ALJ's statement simply combines the assessments of two agency psychiatrists." RR at 21. As previously discussed, however, it is the duty of the court to determine whether statements made by the ALJ are supported by substantial evidence in the Record. In this case, the Magistrate Judge concluded that the ALJ's conclusion of "mild to moderate," non-exertional limitations is

supported by the Record, and this court agrees.  The objection is overruled.

      6.    <u>Use of the Medical-Vocational Guidelines</u>

Under the Second Circuit's ruling in <u>Bapp v. Bowen</u>, 802 F.2d 601, 605-6 (2d Cir. 1986), if a claimant's work capacity is "significantly diminished beyond that caused by his exertional impairment, the application of the [Medical-Vocational Guidelines] is inappropriate."  In this case, the Recommended Ruling found that the ALJ properly relied upon the Medical-Vocational Guidelines ("the grids") because the ALJ's determination that Burden's non-exertional limitations do not compromise her capacity for sedentary work is supported by substantial evidence in the Record.  <u>Id.</u>

Burden now objects to the Recommended Ruling's analysis, arguing that any limitation in non-exertional functioning which is more than "mild" is equivalent to a "severe" impairment in non-exertional functioning, and therefore Burden's work capacity is "significantly diminished" beyond her exertional limitations.  Consequently, Burden contends, the ALJ's reliance on the grids is improper, and the case should be remanded.  This argument, however, is without merit.

Contrary to Burden's contention that any impairment characterized as "mild to moderate" is in fact severe, a "severe impairment" is one that has more than a minimal impact on a claimant's ability to perform basic work activities.  The ALJ found that while Burden has "mild to moderate difficulties in maintaining concentration, persistence, or pace," she can nevertheless engage in work at the sedentary exertional level that requires only "simple instructions and routine repetitive tasks." Tr. 28.  The Magistrate Judge reviewed the Record and concluded that the ALJ's finding was supported by substantial evidence.  This court agrees.  Consequently, Burden's argument that the

ALJ's use of the grids was improper lacks merit, and the objection is overruled.

## V. CONCLUSION

For the reasons discussed herein, and based on a review of the Magistrate Judge's Recommended Ruling [Doc. No. 23], that ruling is **AFFIRMED, ADOPTED,** and **RATIFIED**. Plaintiff's Motion to Reverse the Decision of the Commissioner [Doc. No. 16] is **DENIED**, and defendant's Motion to Affirm the Decision of the Commissioner [Doc. No. 21] is **GRANTED**. Defendant's Motion to Strike [Doc. No. 28] is **DENIED AS MOOT**.

**SO ORDERED**.

Dated this 25th day of November, 2008, at Bridgeport, Connecticut.

    /s/ Janet C. Hall
    Janet C. Hall
    United States District Judge